# In the United States Court of Federal Claims

No. 12-894L
(Filed: September 18, 2013)

|  |  |
|---|---|
| COPAR PUMICE COMPANY, INC., et al., | ) ) ) ) Plaintiffs, ) ) v. ) ) THE UNITED STATES, ) ) Defendant. ) ) | Fifth Amendment Taking; Breach of Settlement Agreement; Forest Service regulation of pumice mines under the Mining Law, 30 U.S.C. §§ 22-42, Common Varieties Act, 30 U.S.C. § 611 et seq., and Jemez National Recreation Area Act, 16 U.S.C. § 460jjj; statute of limitations; collateral estoppel; res judicata; promissory estoppel; unjust enrichment; misrepresentation |

*Joseph E. Manges*, Sante Fe, New Mexico, for plaintiffs.

*Rachel K. Roberts*, Environment and Natural Resources Division, United States Department of Justice, Seattle, WA, with whom was *Robert G. Dreher*, Acting Assistant Attorney General, for defendant. *Dominika Tarczynska*, Environment and Natural Resources Division ,Washington, DC, *Andrew Smith,* Environment and Natural Resources Division and *Steve Hattenbach*, Office of General Counsel, U.S. Department of Agriculture, Albuquerque, New Mexico, of counsel.

## OPINION

**FIRESTONE**, *Judge*.

Pending before the court is a motion to dismiss the present action brought by

plaintiffs Copar Pumice Company, Inc. ("Copar") and Kelly Armstrong (collectively,

"plaintiffs") arising from plaintiffs' mining activities at the El Cajete pumice mine ("El

Cajete Mine"), located on National Forest land within the Jemez National Recreation

1

Area in New Mexico.  As discussed in greater detail below, plaintiffs have been involved in many lawsuits with the defendant the United States ("the government") concerning their mining activities in the Jemez National Recreation Area.[1]  In their latest March 20, 2013 Amended Complaint before this court, plaintiffs allege that the government has caused a "taking" of their vested property rights in their pumice mines in violation of the Fifth Amendment of the United States Constitution when the Forest Service issued a Notice of Indebtedness to plaintiffs in 2009 seeking reimbursement for pumice that the government alleges has been unlawfully mined and sold by plaintiffs.  In particular, plaintiffs assert that the 2009 Notice of Indebtedness improperly interpreted Forest Service regulations to deprive plaintiffs of their ability to remove, generate, and sell undersized and "waste pumice" from their pumice mines, thereby making any mining operations on the El Cajete Mine impossible.  Plaintiffs also charge that the government's issuance of the 2009 Notice of Indebtedness constitutes a breach of a 2002 settlement agreement between plaintiffs and the government that provided an approximately $4 million payment to plaintiffs for the loss of certain mineral rights in the El Cajete Mine and authorized certain mining activities by plaintiffs in the Jemez National Recreation

---

[1] See Cook v. United States, 37 Fed. Cl. 435 (1997) (holding that plaintiffs possessed a vested right to receive a mining patent for any valid mining claims); Cook v. United States, 42 Fed. Cl. 788 (1999) (holding that plaintiffs were entitled to just compensation for taking of patent rights in the El Cajete Mine); Copar Pumice Co., Inc. v. Bosworth, 502 F. Supp. 2d 1200 (D.N.M. 2007) (holding that the Forest Service did not act arbitrarily and capriciously when it determined that El Cajete pumice not used in the stonewash laundry industry was common variety pumice that Copar had no right to sell); Cook v. United States, 85 Fed. Cl. 820 (2009) (holding that government did not breach a settlement agreement between the Forest Service and Copar by filing an administrative complaint with the Bureau of Land Management contesting the validity of the El Cajete mining claims); Copar Pumice Co., Inc. v. Tidwell, 603 F.3d 780 (10th Cir. 2010) (affirming the district court's decision in Bosworth).

Area.  Plaintiffs have also made claims for misrepresentation and unjust enrichment

based on these same underlying Forest Service actions.

The government has moved to dismiss plaintiffs' Amended Complaint[2] in its

entirety for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), and failure to

state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Rules of

the United States Court of Federal Claims ("RCFC").  The government argues that all of

the claims in the pending suit are time-barred because plaintiffs have known about the

government's regulatory interpretation for more than six years.  In addition, the

government argues that this court lacks subject matter jurisdiction over plaintiffs' claims

for misrepresentation and unjust enrichment and thus these claims must be dismissed.

In the alternative, the government argues that plaintiffs' case must be dismissed

for failure to state a claim for relief on the grounds that Copar has previously challenged

the limits on the plaintiffs' mining operations that are the subject of this action, and that

those limits have been upheld in prior court decisions.  The government contends that the

Forest Service's Notice of Indebtedness, which underlies plaintiffs' claims, simply flows

from earlier rulings against plaintiffs and in favor of the government.  Thus, the

government argues that plaintiffs' takings and breach of contract claims are barred under

---

[2] The government argues that plaintiffs' Amended Complaint, which adds an unjust enrichment
claim not found in plaintiffs' original complaint, was untimely filed under RCFC 15(a)(1)
because it was not filed within twenty-one days after service of the original complaint or within
twenty-one days after service of a responsive pleading or motion to dismiss.  To the extent that
the Amended Complaint was untimely filed, the court **GRANTS** leave to file the Amended
Complaint.  RCFC 15(a)(2).  However, for the reasons discussed infra, the court concludes that it
lacks jurisdiction over the unjust enrichment claim.

the doctrines of res judicata and collateral estoppel and must be dismissed under RCFC 12(b)(6).

Plaintiffs oppose the motion to dismiss, arguing, generally, that all of their claims are actionable and present new issues arising out of the government's issuance of the 2009 Notice of Indebtedness. They contend that, prior to the issuance of the Notice of Indebtedness, they understood from the government that they were allowed to generate a certain amount of mining waste and that they were allowed to sell that waste because it was a part of their authorized stonewash pumice mining operation. Plaintiffs argue that these issues are not time-barred and, contrary to the government's contentions, have not been resolved in any prior litigation.

After consideration of these arguments and for the reasons discussed below, the government's motion to dismiss is **GRANTED**.

# I.   STATUTORY AND REGULATORY BACKGROUND

As noted above, the pumice mining claims at issue in this lawsuit are located in the Jemez National Recreation Area. The Area constitutes approximately 57,000 acres of the Santa Fe National Forest. Copar Pumice Co., Inc. v. Tidwell, 603 F.3d 780, 788 (10th Cir. 2010). Mining on public lands is generally subject to regulation by the Secretary of the Interior through the Bureau of Land Management ("BLM"). See Cook v. United States, 85 Fed. Cl. 820, 823-24 (2009). However, Congress gave responsibility for regulating mining on National Forest lands to the Forest Service, which is within the Department of Agriculture. 30 U.S.C. § 601 (2012); Tidwell, 603 F.3d at 785-86.

In order to understand the context and history of this case, the court begins with a brief review of the relevant statutes that govern pumice mining on National Forest lands: The Mining Law of 1872, the Common Varieties Act of 1955, and the Jemez National Recreation Area Act of 1993.  Each will be examined in turn.

### A.    The Mining Law of 1872.

The Mining Law of 1872 ("Mining Law"), 30 U.S.C. §§ 22-42, authorizes citizens to stake, or "locate," a valid mining claim upon "discovery" of a valuable mineral deposit on public lands.  United States v. Locke, 471 U.S. 84, 86 (1985).  After discovering a valuable mineral deposit, and complying with procedures to formally locate the deposit, citizens obtain an unpatented mining claim and have the right of exclusive possession of the land for mining purposes.  See 30 U.S.C. § 26; Locke, 471 U.S. at 86.  These unpatented mining claims are "fully recognized possessory interest[s]."  Locke, 471 U.S. at 86.  However, legal title to the public lands underlying the mining claim belongs to the United States unless and until the mining claimant obtains fee title, or "patent," to the public lands encompassed by the mining claim.  Cal. Coastal Comm'n v. Granite Rock Co., 480 U.S. 572, 575 (1987).  A claimant can obtain fee title by submitting a patent application to the Secretary of the Interior and complying with the list of requirements set forth in the Mining Law.  30 U.S.C. § 29; Freese v. United States, 639 F.2d 754, 755-56 (Ct. Cl. 1981).

### B.    The Common Varieties Act of 1955.

Under the Common Varieties Act of 1955, 30 U.S.C. § 611 et seq., "common variety" minerals such as sand, stone gravel, and pumice could no longer be "located"

under the Mining Law.  Except for mining claims that were valid as of the date of the

Common Varieties Act, since 1955, the government has been required to dispose of

common variety minerals through sales contracts rather than through mining claim

location and patenting.  30 U.S.C. § 611.  Federal regulations promulgated under the

Common Varieties Act govern the disposal of common variety minerals, including

pumice, on National Forest System lands.  36 C.F.R. § 228.41(a), (c).

The Common Varieties Act, however, specifically excludes from its coverage

"uncommon variety minerals," defined as minerals with "distinct and special value." 30

U.S.C. § 611.  Deposits of uncommon variety minerals remain locatable under the

Mining Law.  Tidwell, 603 F.3d at 786.

Pumice is generally considered to be a common variety mineral, not subject to

location under the Mining Law.  See 30 U.S.C. § 611.  Thus, common variety pumice

found on lands managed by the Forest Service may only be purchased at an appraised

value from the Forest Service pursuant to the Materials Act of 1947, 30 U.S.C. § 601, and

Forest Service regulations, 36 C.F.R. §§ 228.50-228.67.  For a brief time, however,

pumice from the El Cajete Mine that is three-quarters of an inch or larger and that could

be sold to the stonewash laundry industry was considered "uncommon variety" pumice

and therefore locatable.  See Copar Pumice Co., Inc. v. Bosworth, 502 F. Supp. 2d 1200,

1215 (D.N.M. 2007), aff'd Tidwell, 603 F.3d 780.[3]

### C.    The Jemez National Recreation Area Act of 1993.

---

[3] These decisions are part of the litigation history identified in note 1, supra.

The Jemez National Recreation Area Act of 1993 ("JNRAA") restricted the issuance of patents for mining claims located within the Jemez National Recreation Area. The JNRAA provides that "[n]otwithstanding any other provision of law, no patents shall be issued after May 30, 1991, for any location or claim made in the recreation area under the mining laws of the United States."  16 U.S.C. § 460jjj-2(a)(1).  In addition, the JNRAA provides that "[s]ubject to valid existing rights, after October 12, 1993, lands within the recreation area [are] withdrawn from location under the general mining laws and from the operation of the mineral leasing, geothermal leasing, and mineral material disposal laws."  Id. § 460jjj-2(b).  The effect of these provisions was to prohibit the patenting of any mining claim within the Jemez National Recreation Area after May 30, 1991, close the Area to the location of new mining claims, and prohibit the removal of common variety minerals.  Bosworth, 502 F. Supp. 2d at 1205.  Mining claimants whose claims were not yet patented as of May 30, 1991 could continue to hold their mining claims as unpatented claims, if the claims qualified as "valid existing rights" as of that date.  16 U.S.C. § 460jjj-2(b).

In enacting the JNRAA, Congress expressly provided that persons who had then-existing unpatented mining claims in the Recreation Area could file a takings action in the Court of Federal Claims for compensation relating to the loss of their patent rights. Actions had to be filed within one year after the passage of the JNRAA.  16 U.S.C. § 460jjj-2(a).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from plaintiffs' Amended Complaint, the settlement agreement attached to plaintiffs' original complaint, and from the public record.[4]  In addition, because this case comes to the court on a motion to dismiss for lack of jurisdiction, some of the facts are taken from attachments to the parties' briefs.[5]  Bush v. United States, 717 F.3d 920, 928 (Fed. Cir. 2013).

### A.    Plaintiffs' mining claims.

Ms. Armstrong, along with Richard Cook, Shirley Cook, and Deborah Cantrup (collectively, "the claimants"), located the Brown Placer Mining Claims Nos. 9-12, 13-16, 23-28, 36-40, 45-49 in the Jemez Mountains in New Mexico on National Forest lands in 1988.  Am. Compl. ¶¶ 5, 8; see also Bosworth, 502 F. Supp. 2d at 1205.  In 1989, the claimants filed a patent application with respect to twenty-three of these claims.  Cook v. United States, 37 Fed. Cl. 435, 437 (1997).  The claimants then leased their mining claims to Copar, which is a company wholly owned and managed by the claimants.  Am. Compl. ¶¶ 6, 8.  Copar operated the El Cajete Mine on Brown Placer Mining Claim Nos. 9-12.  Bosworth, 502 F. Supp. 2d at 1205.  The El Cajete Mine and its four mining claims are the subject of the present action.

### B.    The settlement agreement between claimants and the Forest Service.

---

[4]  The court may properly consider allegations in the complaint, exhibits attached to the complaint, and public record materials under an RCFC 12(b)(6) motion to dismiss.  Terry v. United States, 103 Fed. Cl. 645, 652 (2012).

[5] After briefing was complete but before oral argument, plaintiffs moved to strike several documents attached to the government's reply brief that plaintiffs assert constitute hearsay, double hearsay, and disclose confidential statements made during the course of settlement negotiations between the parties, and are therefore inadmissible under Fed. R. Evid. 408 and 802.  Because the court does not need to rely on these documents to grant the government's motion to dismiss in this case, the court determines that plaintiffs' motion to strike is **MOOT**.

In accordance with the JNRAA, on May 25, 1994, the claimants brought an action in the Court of Federal Claims in Cook v. United States ("Cook I"), 42 Fed. Cl. 788 (1999), for a taking of their patent rights. See 16 U.S.C. § 460jjj-2(a). While this case was pending, the Forest Service issued a final mineral examination report for the claimants' patent application, indicating that locatable pumice was present on the Brown Placer Mining Claims Nos. 9-12, but that the remaining nineteen claims were invalid. Cook I, 42 Fed. Cl. at 789. The "locatable" pumice was identified as "valuable and marketable" pumice that was larger than three-quarters of an inch ("+3/4"") and suitable for use in the stonewash laundry industry (also referred to as "laundry-grade pumice"). Tidwell, 603 F.3d at 788. The Cook I court entered partial summary judgment for the claimants on liability, holding that they were entitled to compensation for the loss of their rights, under the JNRAA, to patent the Brown Placer Mining Claims Nos. 9-12, but not for the remaining invalid claims. Cook I, 42 Fed. Cl. at 795.

Meanwhile, in 1997, the Forest Service approved a ten-year Plan of Operations to allow Copar to mine and remove +3/4" laundry-grade pumice from the El Cajete Mine. Bosworth, 502 F. Supp. 2d at 1205-06; Tidwell, 603 F.3d at 789. The Plan of Operations provided that Copar screen out pumice less than 3/4" and stockpile that smaller pumice for use in a subsequent reclamation of the land. Bosworth, 502 F. Supp. 2d at 1206.

On May 8, 2000, the claimants amended their complaint in Cook I to add Copar as a plaintiff. The parties then entered into a settlement agreement ("Settlement Agreement') in 2002 to "fully and finally settl[e] and resolv[e] all claims in this action." Compl. Ex. 1 ("Settlement Agreement") ¶ 2. In exchange for a "full, complete, and final

resolution of all of Plaintiffs' claims against the United States, legal or equitable, that the

Plaintiffs have asserted or could have asserted either in this case, Docket No. 94-344L, or

in the administrative proceeding entitled <u>Kelly Armstrong, et al.</u>, IBLA No. 2000-3[,]"

the claimants and Copar received $3,911,838 as "just compensation" under the JNRAA.

<u>Id.</u> ¶ 3.

     The Settlement Agreement also defined what rights or claims the claimants and

Copar retained under the agreement.  <u>Id.</u>  The claimants and Copar agreed to relinquish

their invalid mining claims.  <u>Id.</u>  As to the El Cajete Mine, the parties agreed that:

> Plaintiffs will retain Brown Placer Mining Claims Nos. 9-12 as unpatented
> mining claims subject to all pertinent statutes and regulations.  The parties
> acknowledge that Plaintiffs are prohibited from the disposal of the common
> variety pumice produced from Brown Placer Mining Claims Nos. 9-12
> pursuant to 16 U.S.C. § 460jjj-2(b) [the JNRAA].

<u>Id.</u>

     The parties subsequently filed a Joint Stipulation of Dismissal with Prejudice,

dismissing the complaint in <u>Cook I</u>.  Def.'s Mot., Ex. 5.

    **C.**    **The Forest Service's enforcement actions leading up to the 2003 Notice
of Noncompliance.**

     Sometime shortly after operations began in 1997, the Forest Service learned that

Copar was removing laundry-grade pumice from the El Cajete Mine but selling that

pumice for common variety purposes.  <u>Tidwell</u>, 603 F.3d at 789.  The Forest Service sent

several letters to Copar concerning this unlawful practice, culminating in a Notice of

Noncompliance in 2003 ("2003 NON").  <u>Id.</u> at 790.  The letters reminded Copar that

pumice removed from the subject mines must be used in the stonewash laundry industry because that was the only use for which the pumice was classified as "locatable." Id.

As the record from the litigation that grew out of this unlawful practice demonstrates, the plaintiffs knew as early as 1998 that the Forest Service took the view that plaintiffs' practice of selling locatable pumice for other than stonewash laundry use was not authorized. In September 1998, the Forest Service sent a letter to Ms. Armstrong reminding her that locatable pumice could not be sold for "any purpose," and that the sale of pumice from the El Cajete Mine for common variety purposes would call into question the locatability of pumice larger than three-quarters of an inch. Bosworth, 502 F. Supp. 2d at 1207; Def.'s Mot. Ex. 6 (letter). A March 2003 letter from the Forest Service to Ms. Armstrong informed her that Copar was not in compliance with Forest Service regulation 36 C.F.R. § 228 because Copar was removing laundry-grade pumice from the El Cajete Mine and converting it to other uses. Bosworth, 502 F. Supp. 2d at 1207; Def.'s Mot. Ex. 7 (letter). The Forest Service warned Copar that "removal of pumice from the El Cajete mine for conversion to common variety uses (as defined in the Forest Service Regulations) may subject you to action by the United States to recover the value of the improperly removed material." Def.'s Mot. Ex. 7 (letter). The Forest Service's position was reiterated in subsequent letters in May and October of 2003.[6] Bosworth, 502 F. Supp. 2d at 1208; Def.'s Mot. Exs. 8, 9.

---

[6] These official statements by the Forest Service were sometimes not consistent with other statements made by the Forest Service in connection with the Environmental Impact Statement ("EIS") prepared for the El Cajete Mine. However, the District Court for the District of New Mexico later found in Copar Pumice Co., Inc. v. Bosworth that the Forest Service's position that

These letters culminated in the issuance of the 2003 NON to Copar, notifying Copar "that it was violating federal regulations because it was not selling all of the pumice extracted from the El Cajete mine to the stonewash laundry industry." Def.'s Mot., Ex. 10 (2003 NON); Tidwell, 603 F.3d at 790. The 2003 NON "also included a finding that damage to surface resources was being caused by [Copar's] removal of pumice in excess of what it was supposed to be selling to the stonewash laundry industry market." Bosworth, 502 F. Supp. 2d at 1208; Tidwell, 603 F.3d at 790. The 2003 NON requested that Copar supply the Forest Service with complete sales records dating from April of 2002 regarding its pumice sales. Tidwell, 603 F.3d at 790. The 2003 NON also sought a modification of Copar's Plan of Operations to include statements reflecting that all of the pumice removed from the El Cajete Mine would be used in the stonewash laundry industry. Id.

Copar administratively appealed the 2003 NON within the Forest Service, and the Regional Forester upheld the 2003 NON on November 21, 2005. Id.

**D.    Copar's actions in federal court challenging the 2003 NON.**

On February 3, 2006, Copar filed an action in the United States District Court for the District of New Mexico, challenging the 2003 NON and the administrative decisions upholding the 2003 NON. Bosworth, 502 F. Supp. 2d at 1203. The government argued that under the relevant Forest Service regulations, the only type of pumice Copar is

---

the +3/4" pumice could only be used for stonewash laundry purposes, or else be classified as a common variety mineral, was consistent with the Forest Service's regulations, and that statements in the EIS did not "trump" those regulations. 502 F. Supp. 2d at 1211. This opinion was affirmed by the Tenth Circuit in Copar Pumice Co., Inc. v. Tidwell, 603 F.3d at 790.

permitted to extract from the El Cajete Mine is locatable pumice, which is defined by its end-use in the stonewash laundry industry.  Id.  Copar argued that the Forest Service's interpretation of its regulations, which required that all pumice removed from the El Cajete Mine be sold only into the stonewash laundry industry or else be classified as "common variety," was arbitrary and capricious.  Id. at 1208.  Copar asserted that once +3/4" laundry-grade pumice was removed from the mine, Copar could sell it for any purpose, and that the Forest Service's interpretation of the regulations "took" its property rights in violation of the Fifth Amendment of the United States Constitution.  Id. at 1216-17.

The district court affirmed the Forest Service's interpretation and entered judgment for the United States on July 5, 2007 in Copar Pumice Co., Inc. v. Bosworth, 502 F. Supp. 2d at 1215, 1220.  After examining the applicable statutes and regulations, the district court concluded that the Forest Service possesses the power, under the applicable regulations, to "monitor[] Copar's mining activities to make sure that it was not mining common variety pumice, as provided in the Settlement Agreement, and as prohibited by federal law under the JNRAA."  Id. at 1216.  The district court determined that it was not arbitrary and capricious for the Forest Service to interpret its regulations so that the end-use of the El Cajete pumice dictated whether the pumice was "locatable," and therefore lawfully removed, or "common variety," and therefore improperly removed and sold.  Id. at 1215.  The district court rejected the claim that the Forest Service was violating Copar's property rights in light of the fact that "Copar has no right to extract the pumice" for common variety purposes under the Forest Service's lawful interpretation

and application of its regulations.  Id. at 1216-17.  The district court also found that "Copar is violating not only federal law by extracting locatable pumice and selling it for common variety purposes, but also [is] violating the spirit and mandate of the Settlement Agreement entered into by the parties."  Id. at 1219.

The district court's decision was upheld in its entirety by the United States Court of Appeals for the Tenth Circuit on April 19, 2010 in Copar Pumice Co., Inc. v. Tidwell, 603 F.3d at 802.  The Tenth Circuit found that the government reasonably interpreted its regulations to mean that "uncommon variety" pumice becomes common variety pumice when it is not used in an application—here, for the stonewash laundry industry—that emphasizes its distinct and special value.  Id. at 795.  The Tenth Circuit noted that Copar acknowledged in the Settlement Agreement that "it had no right to extract common variety pumice from El Cajete."  Id. at 802.  The Tenth Circuit also rejected Copar's Fifth Amendment takings claim finding that "[b]ecause it was not arbitrary and capricious for the [Forest Service] to conclude that the portion of Copar's +3/4" pumice that is not destined for the garment finishing industry is common variety pumice, Copar has no right to extract common variety pumice, and therefore no [Fifth Amendment] taking occurred."  Id.

**E.     The Forest Service's enforcement actions leading up to the 2006 NON.**

While litigation over the 2003 NON was pending, the Forest Service began monitoring the pumice being removed from the El Cajete Mine, to ensure that pumice less than 3/4" in diameter was not being removed.  Pls.' Resp., Exs. 1, 14-15.  On February 6, 2006, the Forest Service issued a second NON ("2006 NON") advising that

14

"Copar Pumice Co. must immediately cease removing pumice less than 3/4" in diameter from the El Cajete Mine. . . ." Id., Ex. 1 at 2. The 2006 NON addressed removal of common variety pumice from the mine itself, rather than the unauthorized sale of pumice that was the subject of the earlier 2003 NON. The 2006 NON directed Copar to "take whatever processing measures are necessary to ensure the [El Cajete Mine] stockpiles contain essentially no undersize material." Id. An internal Forest Service email suggested that although the JNRAA (if strictly construed) would dictate that removal of "one piece" of undersize pumice from the El Cajete Mine would be a violation of the Act, Forest Service officials considered establishing a threshold of "between 5% and 10%" for excess undersized pumice removed from the mine. Pls.' Resp., Ex. 17.

The 2006 NON was resolved following a meeting between Copar and the Forest Service. A May 16, 2006 letter from the Forest Service to Copar stated:

> The screening tests done in late April indicate that Copar's efforts to bring the screening operation into compliance with the Plan of Operations and Forest Service regulations have resulted in substantially less undersize pumice in the "small product" stockpile. Therefore, the Notice of Noncompliance issued by the Santa Fe National Forest on February 6, 2006 has been resolved, and the small product stockpile (as produced by the screen plan operating as it was on April 27, 2006) may be removed from the site.

Pls.' Resp., Ex. 3 at 2. The 2006 NON concerning the removal of undersized pumice from the El Cajete Mine was thus resolved while the litigation concerning the 2003 NON was still working its way through the district court and, eventually, the Tenth Circuit.

**F.      The claimants' and Copar's 2008 Court of Federal Claims case alleging a breach of the Settlement Agreement.**

In 2008, the signatories to the Settlement Agreement, including these plaintiffs, brought a second case in the Court of Federal Claims, alleging that the government had breached its obligations under the Settlement Agreement by contesting the continued validity of the El Cajete Mine.  Cook v. United States ("Cook II"), 85 Fed. Cl. 820, 822 (2009), aff'd 368 F. App'x 143 (Fed. Cir. 2010).  In United States v. Armstrong et al., No. NMNM 119839 (Feb. 5, 2008), the Forest Service had filed an administrative complaint before the Department of Interior seeking to have the Brown Placer Mining Claims Nos. 9-12 declared null and void because the pumice located within the claims was not a "valuable discovery of a valuable mineral deposit" within the meaning of the Common Varieties Act, 30 U.S.C. § 611.  Cook II, 85 Fed. Cl. at 822; see also Def.'s Mot., Ex. 1.  In that administrative action, the government argued that the laundry-grade pumice market had drastically declined such that Copar's laundry-grade pumice was no longer uncommon variety pumice, and therefore no longer locatable.  Def.'s Mot., Ex. 1 at 2.  In Cook II, the claimants and Copar alleged that in seeking to have their mining claims declared null and void the Forest Service had breached paragraph three of the Settlement Agreement, which they argued ensured "their continued entitlement to [Brown Placer Mining Claims Nos. 9-12] and the right to remove uncommon variety pumice."  85 Fed. Cl. at 822.  They also claimed that the Forest Service's actions constituted a breach of the implied covenant of good faith and fair dealing inherent in the Settlement Agreement.  Id.

After finding that it had jurisdiction, the Court of Federal Claims dismissed Cook II for failure to state a claim, finding that the plaintiffs did not have an unrestricted right

to continue mining the El Cajete Mine because the United States in the Settlement

Agreement had retained the right to regulate plaintiffs' unpatented mining claims.  Id. at

824-25.  The Cook II court found that included in that right was the right under the

Settlement Agreement "to determine whether formerly locatable pumice continues to be

locatable within the meaning of applicable statutes and regulations."  Id. at 824.  The

court also held that "[n]othing in the settlement agreement exempted plaintiffs from

coverage pursuant to the nation's mineral laws.  Indeed the settlement agreement makes it

clear that the opposite is true."  Id.  The Cook II court concluded that because the Forest

Service retained the right to regulate plaintiffs' mining claims, including the right to file

an administrative complaint challenging the continued validity of those claims, there was

no basis for finding a breach of the Settlement Agreement.  Id.

> **G.     The 2009 Notice of Indebtedness and the Forest Service's trespass,
> conversion, and unjust enrichment action against Copar.**

On June 16, 2009, after reviewing Copar's sales records for pumice removed from

the El Cajete Mine, including the sale of laundry-grade pumice for use outside the

stonewash laundry industry, the Forest Service issued a Notice of Indebtedness to Copar

seeking $8.7 million for the pumice that the government determined had been unlawfully

removed from the El Cajete Mine and sold for common variety purposes.  The

government argued that the sale of common variety pumice constituted a trespass to

National Forest System lands and conversion of United States property.  Pl.'s Resp., Ex.

6 at 1 (2009 Notice of Indebtedness).  In the Notice, the government stated:

> Based on records Copar provided to the [Forest Service,] 385,502 tons of
> pumice were removed from El Cajete mine during the period of April 2002

> through November 2007 without authorization or legal right.  This
> constitutes a trespass to National Forest System lands and conversion of
> United States property.  This volume includes pumice of less than 3/4"
> (inch) in diameter, which Copar was not authorized to mine and had no
> legal right to mine and sell.  This volume also includes pumice of 3/4"
> diameter and larger which was mined and sold for uses not authorized
> under the United States mining laws and Forest Service mining regulations.
> This volume also includes pumice removed from the El Cajete mine but not
> accounted for by Copar's records.

Id.

Plaintiffs did not make payment to the government as requested in the Notice of

Indebtedness.  Thereafter, in 2009, the United States brought an action for trespass,

conversion and unjust enrichment in the United States District Court for the District of

New Mexico against the claimants and Copar, seeking payment for the alleged unlawful

removal and sale of pumice, including +3/4" pumice, for purposes other than for use in

the stonewash laundry industry, in violation of the JNRAA and the federal mining laws.

Def.'s Mot., Ex. 11.

The case in New Mexico is currently pending. [7]

### H.    The 2011 Forest Service decision concluding that the El Cajete Mine no longer contained locatable pumice.

---

[7] The court notes that while the government originally sought damages for allegedly unlawful
pumice sales from 2002 through 2009 in its trespass action, the district court has already limited
recovery to only those trespass, conversion, and unjust enrichment claims that post-date April 3,
2006.  The district court found that, under the doctrine of res judicata, the government should
have pursued its trespass, conversion, and unjust enrichment claims as compulsory counterclaims
in Bosworth.  See Def.'s Mot., Ex. 13.  The plaintiffs indicated at oral argument that this ruling
reduced the government's damages claim to approximately $3 million, rather than $8.7 million.

Additionally, plaintiffs in their brief in opposition to the government's motion to dismiss argue
that they retained the right to mine and sell "block pumice" from the El Cajete Mine under
relevant statutes and regulations.  Pls.' Resp. at 11-12.  To the extent that plaintiffs seek to
defend against the trespass, conversion, and unjust enrichment action by arguing that they had
the right to sell "block pumice," this is an issue for the district court.

In 2011, the Department of Interior determined that the Brown Placer Mining Claims Nos. 9-12 were no longer valid because of "precipitous" declines in the markets for stonewash pumice.  Def.'s Mot., Ex. 1.  Thus, the pumice derived from the El Cajete Mine was common variety pumice, and no longer legally locatable.  Id.

The parties indicated at oral argument that an administrative appeal of this determination is now pending in the Interior Board of Land Appeals ("IBLA").

## I.      The present lawsuit.

Plaintiffs' Amended Complaint in this court on March 20, 2013 sets forth six claims against the United States:

Counts I and II assert Fifth Amendment takings claims against the government. Count I alleges that the enactment of the JNRAA and the Forest Service's interpretation of the JNRAA constitutes a taking of plaintiffs' rights to "use and profit from the minerals, including locatable pumice," in the El Cajete Mine.  Am. Compl. ¶ 38.  Count II alleges that the Forest Service's "latest interpretation and application of its regulations" constitutes a taking because it "effectively prohibits ordinary, routine pumice mining operations and prohibits Plaintiffs from any and all economically viable use of their interest in the mining claims by penalizing mining and destroying its economic value for private ownership."  Id. ¶ 42.

Counts III and IV assert that the same government actions breached the 2002 Settlement Agreement.  Count III alleges that the Forest Service's interpretation of its regulations that Copar has wrongfully converted "all materials removed from the claims

which were not actually sold into or used by the laundry industry, including the undersized pumice, dirt and waste" violates the Settlement Agreement, which, plaintiffs allege, allows for the "sale of uncommon variety pumice for any purpose." Id. ¶¶ 49, 51. Count IV alleges that in doing so, the Forest Service also breached the covenant of good faith and fair dealing inherent in the Settlement Agreement.  Id. ¶¶ 55-57.

Finally, Counts V and VI assert equitable claims against the United States.  Count V alleges that Copar detrimentally relied on alleged misrepresentations of Forest Service officials that Copar could lawfully remove some undersized pumice from its mining claims. Id. ¶ 59.  Count VI alleges that the government has been and will be unjustly enriched by unlawfully "prohibiting the removal of 3/4"+ locatable pumice from [plaintiffs' mining] claims and by assessing damages, penalties, fees, costs and amounts against Copar for the removal, processing and sale of the 3/4" pumice removed from the claims." Id. ¶ 65.  Plaintiffs seek damages for this claim including any damages awarded against Copar in the United States' trespass, conversion, and unjust enrichment action in district court.

Briefing on the government's motion to dismiss was complete on July 25, 2013, and oral argument was held on August 29, 2013.

## III.   STANDARD OF REVIEW

### A.   Subject matter jurisdiction.

Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter.  See PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1365 (Fed. Cir. 2007) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998)).

Because jurisdiction is a threshold matter, a case can proceed no further if a court lacks jurisdiction to hear it.  See Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." (citation omitted)).  The plaintiff bears the burden of establishing subject matter jurisdiction and must do so by a preponderance of the evidence.  M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)).

When a party has moved to dismiss for lack of subject matter jurisdiction, the alleged facts in the complaint are viewed as true unless contested.  Pixton v. B & B Plastics, Inc., 291 F.3d 1324, 1326 (Fed. Cir. 2002) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  Thus, in considering a motion to dismiss for lack of subject matter jurisdiction, a court may look beyond the pleadings and "inquire into jurisdictional facts" to determine whether jurisdiction exists, without converting a motion to dismiss into a motion for summary judgment.  Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991).  As a jurisdictional defense, the statute of limitations is properly asserted in a RCFC 12(b)(1) motion to dismiss.  Stanley v. United States, 107 Fed. Cl. 94, 97 (2012).

###### B. Failure to state a claim upon which relief may be granted.

To avoid dismissal for failure to state a claim upon which relief may be granted under RCFC 12(b)(6), the complaint must contain facts sufficient to "'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To determine whether

a complaint states a plausible claim for relief, a court must engage in a context-specific

analysis and "draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at

1950.  In considering a motion under RCFC 12(b)(6), "the court must accept as true the

complaint's undisputed factual allegations and should construe them in a light most

favorable to the plaintiff."  Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir.

2009) (citing Papasan v. Allain, 478 U.S. 265, 283 (1986); Gould, Inc. v. United States,

935 F.2d 1271, 1274 (Fed. Cir. 1991)).  The court may properly consider allegations in

the complaint, exhibits attached to the complaint, and public record materials under an

RCFC 12(b)(6) motion to dismiss.  Terry v. United States, 103 Fed. Cl. 645, 652 (2012).

The affirmative defenses of res judicata and collateral estoppel are also properly

considered under a RCFC 12(b)(6) motion to dismiss.  Lewis v. United States, 99 Fed.

Cl. 772, 781 (2011).

## IV.   DISCUSSION

A.   **To the extent plaintiffs allege a taking of their mining rights based on the "enactment" of the JNRAA in 1993, Count I of the Amended Complaint is time-barred by the Tucker Act's six-year statute of limitations and this court therefore lacks jurisdiction over that claim.**

Count I of plaintiffs' Amended Complaint asserts a Fifth Amendment takings

claim against the government based on the "enactment of Section 3(a) of the [JNRAA.]"

Am. Compl. ¶ 38.  As the Amended Complaint explains, "Section 3(a)(1) of the

[JNRAA] withdrew the lands upon which Plaintiffs' Brown Placer Mining Claims are

located from application of the Mining Act, thereby precluding Plaintiffs from obtaining

the patent to which they would otherwise be entitled under the Mining Act."  Id. ¶ 37.

The Amended Complaint further alleges that "[t]hrough enactment of Section 3(a) and the Forest Service's subsequent interpretation thereof, the United States has unconstitutionally taken Plaintiffs' private property for public use, without compensation." Id. ¶ 39.  Count I concludes by seeking "just compensation for the full value of the private property rights vested in Plaintiffs pursuant to the Mining Act, which the United States has unconstitutionally taken from Plaintiffs through enactment of the [JNRAA] . . . ." Id. at 8.

To the extent that plaintiffs are asserting a takings claim in Count I based on the Forest Service's more recent interpretation of its regulations and resulting enforcement actions, the court addresses such a claim in Part IV.B, infra.  Otherwise, any takings claim plaintiffs' now assert based on the enactment of the JNRAA is barred by the six-year statute of limitations applicable to claims before this court.

That statute of limitations, 28 U.S.C. § 2501, sets an absolute limit on this court's jurisdiction to claims that accrued within six years prior to the filing of the complaint.  A takings claim "first accrues only when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." Casitas Mun. Water Dist. v. United States, 708 F.3d 1340, 1359 (Fed. Cir. 2013) (internal quotation omitted).  Because it is a condition of the United States' waiver of sovereign immunity, the six-year statute of limitations governing plaintiffs' claims is jurisdictional in nature, and must be construed strictly.  Shoshone Indian Tribe v. United States, 364 F.3d 1339, 1346 (Fed. Cir. 2004).

Plaintiffs' Count I is based, at least in part, on the enactment of the JNRAA, which occurred over nineteen years ago.  Am. Compl. ¶¶ 35-39.  Any taking based on the limitations placed on mining in the Recreation Area by virtue of the JNRAA accrued well outside the six-year statute of limitations applicable to all claims brought in this court.[8] The court thus dismisses Count I of the Amended Complaint, to the extent that it is based on the "enactment" of the JNRAA, for lack of subject matter jurisdiction under RCFC 12(b)(1).[9]

**B.    Plaintiffs' takings and breach of contract claims (Counts I-IV) must be dismissed under RCFC 12(b)(6) for failure to state a claim upon which relief may be granted.**

In Counts II-IV, and, in part, Count I of their Amended Complaint, plaintiffs assert that the Forest Service has taken their property interest in the El Cajete Mine and breached the 2002 Settlement Agreement by asserting, for the first time in the 2009 Notice of Indebtedness, that Forest Service regulations and the JNRAA bar plaintiffs

---

[8] This claim also falls outside of the one-year statute of limitations in the JNRAA.  16 U.S.C. § 460jjj-2(a)(2).

[9] The government also argues that plaintiffs' remaining takings and breach claims are based on the Forest Service's interpretation of its regulations that plaintiffs knew or should have known about more than six years ago. At the very latest, the government argues, plaintiffs should have known of the government's interpretation of its regulations based on the 2003 NON and the government's 2006 briefing in the Bosworth litigation.  The court agrees that plaintiffs have been aware of the Forest Service's general view that plaintiffs have no rights to the common variety pumice either mined or generated by their mining activities for more than six years and that for that reason they might be liable for trespass and conversion of any common variety minerals sold from the El Cajete Mine.  However, it was not until the 2009 Notice of Indebtedness that the government actually sought payment from plaintiffs.  For this reason, the court holds that plaintiffs' claims, to the extent they are based on the Notice of Indebtedness, are not time-barred. A challenge based on what plaintiffs characterize as the Forest Service's new interpretation of its regulations in the Notice of Indebtedness would not have been ripe.  See Barlow & Haun, Inc. v. United States, 87 Fed. Cl. 428, 435 (2009).

from selling "waste pumice" left over from the off-site processing of laundry-grade pumice for common variety purposes.  Plaintiffs further argue that the Forest Service has taken their mining claims and breached the Settlement Agreement by asserting in the Notice of Indebtedness that Copar was not authorized to mine and remove undersized pumice from the El Cajete Mine or generate waste pumice, contrary to the statements made in connection with the 2006 NON.

Specifically, the Amended Complaint describes the government's interpretation of its regulations in the 2009 Notice of Indebtedness as "affirmatively requir[ing] that <u>all</u> material pumice removed from the [El Cajete Mine] claims had to be actually used in the laundry industry, including the dirt, rocks, lithics, and undersized pumice that was not remotely suitable for sale to or use in the laundry industry.  The Forest Service interprets its regulation[s] to mean that Copar trespassed upon federal land and converted any and all pumice which was not actually used in the laundry business."  Am. Compl. ¶ 25.

The Amended Complaint goes on to state that the Forest Service interpreted its regulations to "require Copar to verifiably prove, to its sole and arbitrary satisfaction, that all of the pumice removed from the mine, including dirt, rocks, and other materials taken from the claims, were actually used in the laundry industry."  <u>Id.</u> ¶ 26.   The Amended Complaint alleges that the "Forest Service provided no standards describing what would be satisfactory proof of verification of such actual use."  <u>Id.</u>

Finally, the Amended Complaint alleges that the Forest Service's trespass action (and, by implication, the 2009 Notice of Indebtedness) "asserts that Copar converted all of the pumice, including that wasted by transportation and processing of the pumice, and

seeks damages for the value which far exceed the amount paid to Copar in the Settlement

Agreement . . . ."  Id. ¶ 29.  The Amended Complaint alleges that the Forest Service

never previously announced, interpreted, or applied its regulations in a similar fashion.

Id. ¶ 30.  The Amended Complaint characterizes all of the Forest Service's alleged

actions as "unreasonable," "criminalizing ordinary, routine mining of pumice," and

"prohibit[ing] traditional routine American mining operations in favor of foreign mining

operations."  Id. ¶¶ 27, 31-32.  Plaintiffs allege that they are damaged by the Forest

Service's interpretation requiring that all pumice removed from plaintiffs' mining claims,

including "waste pumice," must be used in no other industry except the stonewash

laundry industry.  Id. ¶ 34.

These allegations form the basis of plaintiffs' takings and breach of contract

claims.  Specifically, Counts I and II of the Amended Complaint allege a taking in

violation of the Fifth Amendment based on the Forest Service's interpretations of the

JNRAA (Count I) and its regulations (Count II), which plaintiffs allege deprive them of

their right to sell "waste pumice" and their ability to operate their mining claims.  Id. ¶¶

38-39, 42.  Counts III and IV allege a breach of the Settlement Agreement and a breach

of the implied covenant of good faith and fair dealing, asserting that the Forest Service's

application of its regulations interfered with plaintiffs ability to mine and sell locatable

pumice "for any purpose" under the Settlement Agreement.  Id. ¶¶ 49, 51, 56.

For the reasons discussed below, the court finds that the issue of whether

plaintiffs' "own" El Cajete pumice sold for common variety purposes was already

decided against plaintiffs in Bosworth and Tidwell, is dispositive of plaintiffs' takings

claim regarding its property interests in "waste pumice" in this case, and may not be relitigated now under the doctrine of collateral estoppel.  Moreover, to the extent that plaintiffs argue that the 2009 Notice of Indebtedness constitutes an impermissible interpretation of Forest Service regulations because it forbids plaintiffs, for the first time, from removing any undersized pumice from the El Cajete Mine or generating any "waste pumice," this argument is unfounded because it mischaracterizes the Notice of Indebtedness and is otherwise not ripe.  For similar reasons, plaintiffs cannot assert a claim for a breach of the Settlement Agreement because the Agreement expressly acknowledges that plaintiffs may only operate the El Cajete Mine in accordance with Forest Service regulations.  As a result, plaintiffs' takings and breach claims fail to state a claim upon which relief may be granted under RCFC 12(b)(6).

> **1.     Under the district and circuit court holdings in <u>Bosworth</u> and <u>Tidwell</u>, plaintiffs do not have a property interest in extracted pumice not sold to the stonewash laundry industry, and therefore fail to state a takings claim based on their ownership of and right to sell "waste pumice" or undersized pumice for any purpose.**

Plaintiffs' Counts I and II first assert, in part, that the Forest Service has "taken" plaintiffs' property rights in their mining claims because the Forest Service has interpreted its regulations to require that all pumice removed from plaintiffs' mining claims, including "waste pumice," can be sold only to the stonewash laundry industry. <u>See</u> Am. Compl. ¶¶ 20, 25, 38, 42.  The government contends that plaintiffs' right to sell El Cajete pumice for common variety purposes, including "waste pumice," has been the subject of prior litigation.  In <u>Bosworth</u> and <u>Tidwell</u>, the courts upheld the government's

regulatory interpretation, set forth in the 2003 NON, that the classification of plaintiffs'
El Cajete pumice depended on its end-use, and that any pumice not sold into the
stonewash laundry industry was common variety pumice, which plaintiffs could not
lawfully extract or sell from the El Cajete Mine.  See Tidwell, 603 F.3d at 794-98.  The
Bosworth and Tidwell courts also held that the Forest Service's interpretation of its
regulations as set forth in the 2003 NON did not give rise to a taking.  See id. at 802.  The
government contends that plaintiffs' present takings claims based on their ownership of
and right to sell "waste pumice" generated through their authorized stonewash laundry
mining operation is therefore barred by the doctrine of collateral estoppel.[10]

Under the doctrine of collateral estoppel or issue preclusion, "once a court has
decided an issue of fact or law necessary to its judgment, that decision is conclusive in a
subsequent suit based on a different cause of action involving a party to the prior
litigation."  United States v. Mendoza, 464 U.S. 154, 158 (1984); see also Laguna
Hermosa Corp. v. United States, 671 F.3d 1284, 1288 (Fed. Cir. 2012).  As explained by
the Federal Circuit:

> Issue preclusion bars a cause of action when four conditions are met: (1)
> the issue is identical to one decided in the first action; (2) the issue was
> actually litigated in the first action; (3) resolution of the issue was essential

---

[10] While the government also argues that plaintiffs' takings and breach claims are barred by the
doctrine of res judicata, the court finds that the collateral-estoppel doctrine more properly
precludes plaintiffs' claims.  Under the doctrine of res judicata, "[a] final judgment on the merits
of an action precludes the parties or their privies from relitigating issues that were or could have
been raised in that action."  Slattery v. Roth, 710 F.3d 1336, 1346 (Fed. Cir. 2013) (internal
citations and quotations omitted).  Because plaintiffs argue that the present lawsuit is based on
the issuance of the 2009 Notice of Indebtedness, which post-dates both the Bosworth and
Tidwell litigation as well as plaintiffs' breach claim in Cook II, the court principally analyzes
plaintiffs' takings and breach claims under the collateral-estoppel doctrine.

to a final judgment in the first action; and (4) the plaintiff had a full and fair opportunity to litigate the issue in the first action.

Laguna Hermosa, 671 F.3d at 1288 (citing In re Freeman, 30 F.3d 1459, 1465 (Fed. Cir. 1994)).  In this case, the court agrees with the government that all four requirements are met and that, therefore, plaintiffs' takings claims based on their ownership of and ability to sell "waste pumice" are barred.

First, the basis of plaintiffs' takings claims—that plaintiffs own and may sell El Cajete "waste pumice" for purposes other than use in the stonewash laundry industry —is identical to the issue decided by the district court in Bosworth and affirmed by the Tenth Circuit in Tidwell.  The main issue before those courts was whether the Forest Service properly determined that pumice removed from the El Cajete Mine that does not go to the stonewash laundry industry is common variety pumice, which Copar does not own and cannot sell under the JNRAA and Forest Service regulations.  Based on an examination of the federal mining statutes, regulations, and case law, the Bosworth court upheld the Forest Service's "position that all pumice extracted from El Cajete mine must be sold to the stonewash laundry industry to be considered locatable and of uncommon variety." 502 F. Supp. 2d at 1215.  The Bosworth court found that plaintiffs' position that all locatable pumice could be extracted and disposed of in any manner "makes no sense because it eviscerates the purpose behind the regulations which define a mineral as 'locatable' in the first place." Id. at 1219.  The Bosworth court also rejected Copar's takings claim because Copar did not have a property interest in pumice sold for common variety purposes:

Copar argues that once the pumice is removed from El Cajete mine, it becomes its personal property. In arriving at that point, Copar makes a critical but erroneous assumption that it retains the right to extract the pumice in the first place. The agency maintains that the pumice extracted from El Cajete mine is not locatable if it is sold for common variety purposes, under its interpretation of its regulations. If this interpretation does not violate APA standards, then Copar has no right to extract the pumice, and the extracted mineral does not become Copar's personal property. If the pumice does not belong to Copar, then [the] holding [in Forbes v. Gracey, 94 U.S. 762 (1876) to the effect that Copar owns the locatable pumice, once extracted] does not apply. I have already determined that the agency's interpretation of its regulations as requiring end use to define locatability was not arbitrary or capricious. Therefore, Copar's right to mine the pumice was in question, and the agency did not violate Plaintiff's property rights.

Id. at 1216-17 (emphasis added).

The Tenth Circuit upheld the district court's decision in Bosworth and rejected Copar's argument that the Forest Service's interpretation of its regulations was arbitrary and capricious. Tidwell, 603 F.3d at 794-98. The Tidwell court found that the Forest Service could conclude from its regulations that an "uncommon variety" mineral becomes a common variety mineral "when it is no longer used in an application that emphasizes its distinct and special value." Id. at 795. As to Copar's pumice specifically, the Tenth Circuit found that Copar had no authority to mine pumice that it sold for common variety uses:

The portion of +3/4" pumice that Copar has sold for common variety uses does not meet this definition [of locatable] because it is not being used in an application that emphasizes its distinct and special value [for the stonewash laundry industry]. In this situation, this particular +3/4" pumice becomes a common variety mineral—i.e., a deposit with some economic value that is used in a generic application—that Copar acknowledged it has no authority to mine.

Id.  Based on this determination, the Tenth Circuit also concluded that Copar could not

assert a takings claim, stating:

> Copar contends the [Forest Service's] interpretation deprives the company of its
> vested right in the +3/4" pumice not destined for the garment finishing industry.
> But as the district court reasoned, [this argument] assumes that the extracted
> minerals were subject to location.  Copar acknowledged in the [2002] settlement
> agreement that it had no right to extract common variety pumice from El Cajete.
> Because it was not arbitrary and capricious for the [Forest Service] to conclude
> that the portion of Copar's +3/4" pumice that is not destined for the garment
> finishing industry is common variety pumice, Copar had no right to extract
> common variety pumice, and therefore no taking occurred.

Id. at 802 (emphasis added).

In this case, plaintiffs' takings claims based on the 2009 Notice of Indebtedness

raise the same issue as Copar's lawsuit in Bosworth and Tidwell.  Once again, plaintiffs

are challenging the Forest Service's interpretation of its regulations that "affirmatively

require that all material pumice removed from the [El Cajete Mine] claims had to be

actually used in the laundry industry."  Am. Compl. ¶ 25.[11]  Plaintiffs assert in the

Amended Complaint that the sale of El Cajete "waste pumice," which is "not remotely

suitable for sale to or use in the laundry industry," should be permissible, and that the

---

[11]  Plaintiffs also complain that the Forest Service interpreted its regulations to "require Copar to
verifiably prove, to its sole and arbitrary satisfaction that all of the pumice removed from the
mine, including dirt, rocks, and other materials taken from the claims, were actually used in the
laundry industry."  Am. Compl. ¶ 26.  The Amended Complaint alleges that the "Forest Service
provided no standards describing what would be satisfactory proof of verification of such actual
use."  Id.  Copar also asserted this grievance in Bosworth and Tidwell.  The 2003 NON
demanded that Copar provide the Forest Service with a "verifiable method of proving all of the
pumice produced from the El Cajete Mine since April 4, 2002 (the date of the settlement
agreement) has been used only in the stonewash laundry industry."  Tidwell, 603 F.3d at 799.
The Tenth Circuit rejected Copar's argument that this requirement was vague, arbitrary, or
oppressive.  Id. at 799-801.  Here, the court rejects plaintiffs' claim that the Forest Service has
held them to a vague standard on the grounds that they have previously litigated the Forest
Service's interpretation of its regulations and thus their claims in this court are barred under the
collateral-estoppel doctrine.

Forest Service's application of its regulations in the 2009 Notice of Indebtedness, depriving them of that alleged right, constitutes a taking.  Id. ¶¶ 25, 39, 42.  The prior litigation, however, establishes that plaintiffs do not have a property interest in common variety pumice, which, under Bosworth and Tidwell, the Forest Service has lawfully defined as pumice not sold for stonewash laundry purposes.  This includes "waste pumice," which plaintiffs concede they have sold for common variety purposes.  Am. Compl. ¶ 50.

The second condition of the collateral-estoppel doctrine, "the requirement that the issue have been actually decided[,] is generally satisfied if the parties to the original action disputed the issue and the trier of fact decided it."  Freeman, 30 F.3d at 1466 (citing Mother's Rest., Inc. v. Mama's Pizza, Inc., 723 F.2d 1566, 1569 (Fed. Cir. 1983)).  The third condition—that the resolution of the issue was essential to the final action—is meant to "prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation."  Id. at 1466 (citing Mother's, 723 F.2d at 1571).  Both of these conditions are satisfied here.  The Bosworth and Tidwell parties litigated and the courts expressly held that Copar cannot claim ownership to pumice not destined for the stonewash laundry industry.  See Tidwell, 603 F.3d at 802. Thus, Copar's ownership of and right to sell El Cajete pumice for common variety purposes was explicitly litigated and essential to the decisions by the district court in Bosworth and the Tenth Circuit in Tidwell.

Finally, to apply issue preclusion, "the party against whom the estoppel is being asserted must have been accorded a full and fair opportunity to litigate in the prior court

proceeding the very issue he now seeks to relitigate." <u>Freeman</u>, 30 F.3d at 1467.  The

Supreme Court has stated that relitigation of issues is warranted if there is reason to doubt

the "quality, extensiveness, or fairness of procedures followed in the prior litigation." <u>Id.</u>

(citing <u>Montana v. United States</u>, 440 U.S. 147, 164 & n.11 (1979)).  This court has no

reason to doubt the quality, extensiveness, or fairness of the procedures followed in the

district court in <u>Bosworth</u>.  The fact that the Tenth Circuit in <u>Tidwell</u> affirmed the district

court's conclusions in their entirety "strongly suggests that the district court proceedings

were not insufficient." <u>Id.</u>

        Based on the foregoing analysis, the court concludes that to the extent plaintiffs'

takings claims are based on their ownership of "waste pumice" sold for common variety

purposes, those claims improperly attempt to relitigate an issue already decided in

<u>Tidwell</u> and <u>Bosworth</u>.  Not only did the Tenth Circuit in <u>Tidwell</u> uphold the Forest

Service's interpretation that barred plaintiffs from removing and selling pumice not

destined for the stonewash laundry industry, the Tenth Circuit went on to expressly find

that the Forest Service's interpretation of its regulations did not give rise to a taking

under the Fifth Amendment because plaintiffs did not own the right to extract and sell

pumice not used for stonewash laundry purposes.

        In this regard, and contrary to plaintiffs' assertions, the Notice of Indebtedness

does not contain a "new" interpretation by the Forest Service of the United States'

"ownership" interests in El Cajete pumice under its regulations.  Under established

federal mining laws and the terms of the 2002 Settlement Agreement, the United States

owned and retained the sole right to dispose of any common variety minerals at the El

Cajete Mine.  30 U.S.C. §§ 601, 611; Cook II, 85 Fed. Cl. at 824 ("Until a patent issues, the government retains rights and interest in the federal lands and has the authority to regulate them."); see also Tidwell, 603 F.3d at 784-85, 802 ("Copar acknowledged in the [2002] settlement agreement that it could not dispose of any common variety pumice produced from [the El Cajete Mine].").  The 2009 Notice of Indebtedness was simply issued to recoup payment from plaintiffs for the common variety pumice plaintiffs sold but did not own, based on the decisions in Bosworth and Tidwell.   Under the doctrine of collateral estoppel, plaintiffs' takings claims based on their ownership of and right to sell "waste pumice" for common variety purposes are foreclosed by these decisions.[12]

---

[12] At oral argument, plaintiffs refined their takings claim by arguing that the United States had relinquished its ownership of "waste pumice" generated by processing locatable pumice by requiring plaintiffs to dispose of "waste pumice" in a landfill, and that, therefore, plaintiffs could dispose of "waste pumice" in any manner, including selling it for common variety purposes.  For the reasons discussed above, the court concludes that this argument is barred by collateral estoppel, based on the general holding in Bosworth and Tidwell that plaintiffs had no property right in "common variety pumice"—pumice, including "waste pumice," not sold to the stonewash laundry industry.  Tidwell, 603 F.3d at 802.

However, to the extent that the disposal of this subset of El Cajete pumice was not expressly litigated in Bosworth and Tidwell, the court agrees with the government that any takings claim based on the disposal of "waste pumice" is barred by the doctrine of res judicata.  Under this doctrine, all claims that were raised or could have been raised in a prior lawsuit are barred if "(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts the first."  Ammex, Inc. v. United States, 334 F.3d 1052, 1055 (Fed. Cir. 2003) (citations omitted).

Plaintiffs do not dispute that the parties are identical or in privity in both this case and the Bosworth and Tidwell decisions, and that those suits both proceeded to a final judgment on the merits.  Plaintiffs argue that their takings claims in this court are based on the 2009 Notice of Indebtedness, which post-dates the Bosworth litigation, and that, therefore, res judicata does not apply.  Yet, as discussed above, plaintiffs' claims are based, at bottom, on their right to sell El Cajete "waste pumice" to industries other than the stonewash laundry industry.  To the extent that the sale of "waste pumice" was not explicitly at issue in Bosworth and Tidwell, this claim is based on the same transactional facts as those cases, namely, the Forest Service's interpretation of its regulations in the 2003 NON to prohibit plaintiffs from claiming an ownership interest in

34

2.    **Plaintiffs' takings claims based on the Forest Service's alleged interpretation of its regulations prohibiting plaintiffs from removing undersized pumice or generating "waste pumice" mischaracterizes the Notice of Indebtedness and is otherwise not ripe.**

The court also rejects plaintiffs' contention that collateral estoppel does not bar their takings claims because the Notice of Indebtedness contains a new interpretation of Forest Service regulations that prohibits plaintiffs from removing any undersized pumice from the El Cajete Mine or generating any "waste pumice." Specifically, plaintiffs point to the language in the Notice of Indebtedness that states that Copar has unlawfully "removed . . . pumice of less than 3/4" (inch) in diameter" from the El Cajete Mine. Pls.' Resp., Ex. 6. Plaintiffs argue that this statement in the Notice of Indebtedness requires plaintiffs to use all pumice extracted from the El Cajete Mine in the stonewash laundry industry, which plaintiffs assert is impossible. Pls.' Resp. at 4. Plaintiffs further argue that this interpretation of the Forest Service's regulations is contrary to the settlement of the 2006 NON—which permitted plaintiffs to remove some amount of undersized pumice from the El Cajete Mine. Plaintiffs conclude that the alleged interpretation advanced by the Notice of Indebtedness constitutes a "taking" of plaintiffs' property interests in their mining claims because it effectively prohibits pumice mining operations. Am. Compl. ¶ 42.

Plaintiffs' argument is without merit. First, plaintiffs have mischaracterized the purpose of the 2009 Notice of Indebtedness. The 2009 Notice of Indebtedness was not

---

pumice not destined for the stonewash laundry industry. See Tidwell, 603 F.3d at 802. Plaintiffs are precluded now from litigating a takings claim for "waste pumice" under the doctrine of res judicata, because plaintiffs could have raised that takings claim in Bosworth.

issued in order to regulate plaintiffs' mining activities, but rather to recover for any common variety pumice actually sold by plaintiffs from the El Cajete Mine.  For the reasons set forth above, Bosworth and Tidwell confirmed that plaintiffs have no property interest in or right to sell common variety pumice, which is defined by its end-use.  They cannot in this case relitigate their right sell pumice to anything other than the stonewash laundry industry by arguing that the Notice of Indebtedness raises new issues.  The basis for the Notice of Indebtedness—the plaintiffs' sale of common variety pumice—was already decided in Bosworth and Tidwell.

Second, even if the Notice of Indebtedness did advance a new interpretation of Forest Service regulations that now forbids plaintiffs from removing any undersized pumice or generating any "waste pumice," their challenge to this new interpretation is at the very least not ripe.   The parties acknowledged at oral argument that plaintiffs ceased operating the El Cajete Mine in 2007 when their ten-year Plan of Operations expired and was not renewed.  See Tidwell, 603 F.3d at 792.  The Department of Interior in its 2011 administrative opinion has foreclosed mining on plaintiffs' claims by finding that the El Cajete Mine no longer contains locatable pumice.  Def.'s Mot., Ex. 1.  Plaintiffs have therefore ceased their mining operations at the El Cajete Mine for reasons that have nothing to do with the statement in the 2009 Notice of Indebtedness.

The parties further indicated at oral argument that the 2011 Department of Interior decision is currently being administratively appealed by plaintiffs.  Unless that appeal is resolved in plaintiffs' favor and until plaintiffs once again begin mining operations on the El Cajete Mine, the challenge to the Forest Service's statement in the Notice of

Indebtedness regarding mining without waste generation or removal of undersized pumice is not ripe.  If, sometime in the future, plaintiffs are allowed to operate the El Cajete Mine and the Forest Service bars their operations on the above-noted ground, plaintiffs may at that time raise their objections to the statement in the Notice of Indebtedness.

For all of these reasons, the court concludes that plaintiffs fail to state a takings claim in this case based on the Forest Service's requirement—upheld by <u>Bosworth</u> and <u>Tidwell</u>—"that <u>all</u> material pumice removed from the [El Cajete Mine] claims had to be actually used in the laundry industry."  Am. Compl. ¶ 25.[13]   The court dismisses plaintiffs' Count I, to the extent that it relies on the recent regulatory actions of the Forest Service, and Count II under RCFC 12(b)(6).

> **3.    Plaintiffs have failed to state a claim for an express breach of the 2002 Settlement Agreement or a breach of the implied covenant of good faith and fair dealing because plaintiffs do not retain the right, under the Settlement Agreement, to extract pumice from the El Cajete Mine for "any purpose."**

For many of the same reasons discussed above, the court must also dismiss plaintiffs' claims based on a breach of the 2002 Settlement Agreement.  In Count III of

---

[13] The court also rejects plaintiffs' argument that the takings claim should not be dismissed because factual questions remain concerning exactly what types of pumice were extracted from the El Cajete Mine, processed by Copar, and sold. As acknowledged by the <u>Bosworth</u> court, factual disputes concerning the pumice removed and sold from the El Cajete Mine were not critical because Copar conceded that it sold El Cajete pumice for common variety purposes. <u>Bosworth</u>, 502 F. Supp. 2d at 1218. Here, plaintiffs similarly concede in their Amended Complaint that Copar sold "waste pumice" for common variety purposes. Am. Compl. ¶ 50. To the extent that plaintiffs seek to defend against the Notice of Indebtedness and the Forest Service's subsequent 2009 trespass, conversion, and unjust enrichment action by arguing that some of the pumice they sold was not common variety pumice (because it was locatable "block pumice," for example), this is an issue for the district court.  Plaintiffs are simply foreclosed from claiming in this court that they had the right to sell common variety pumice.

their Amended Complaint for express breach of the Settlement Agreement, plaintiffs

allege that, under that Agreement:

> [t]he parties contemplated that Copar would continue mining operations
> upon the [El Cajete mining] claims.  The transportation, processing, and
> sale of uncommon variety pumice into the laundry industry was an
> essential, material term of the Agreement.  The sale of uncommon variety
> pumice <u>for any purpose</u> was part of the Agreement.

Am. Compl. ¶ 49 (emphasis added).  Plaintiffs acknowledge in the Amended Complaint

that they sold "waste pumice," left over from processing the laundry-grade pumice, for

"common variety purposes."  <u>Id.</u> ¶ 50.  Plaintiffs then assert that the government has

breached the Settlement Agreement by forbidding plaintiffs from selling any El Cajete

pumice for common variety purposes:

> The Forest Service now interprets and applies its regulations, such that
> Copar has unlawfully converted all materials removed from the claims
> which were not actually sold into or used by the laundry industry, including
> the undersized pumice, dirt and waste; charges Copar with unlawfully
> trespassing upon federal property; and seeks enormous, windfall damages
> and profits in doing so. . . . The United States has substantially breached its
> obligations under the Settlement Agreement with Defendants in doing so.

<u>Id.</u> ¶¶ 51, 53.  Count IV of the Amended Complaint further asserts that the government

"violated its duty of good faith and fair dealing in the performance and/or enforcement of

the Settlement Agreement, acting in bad faith, wrongfully and intentionally using the

Settlement Agreement to the detriment of Plaintiffs, and/or otherwise injuring the rights

of Plaintiffs to receive the benefit of the Agreement."  <u>Id.</u> ¶ 56.

In light of <u>Bosworth</u> and <u>Tidwell</u>, and based on the language of the Settlement

Agreement, the court agrees with the government that these allegations fail to state a

valid breach claim.  The Settlement Agreement specifically states that "Plaintiffs are

38

prohibited from the disposal of the common variety pumice produced from Brown Placer Mining Claims Nos. 9-12 pursuant to [the JNRAA]."  Settlement Agreement ¶ 3. Plaintiffs also agreed in the Settlement Agreement that they retained only "unpatented mining claims" at the El Cajete Mine "<u>subject to all pertinent statutes and regulations</u>." <u>Id.</u> (emphasis added).  In addition, in their Amended Complaint, plaintiffs acknowledge that the parties "intended," under the Settlement Agreement, that Copar would operate the El Cajete Mine to remove and process pumice "for sale into the laundry industry." Am. Compl. ¶ 18.

Plaintiffs' argument that the Forest Service breached the Settlement Agreement by interpreting its regulations to forbid plaintiffs from selling El Cajete pumice for common variety purposes thus ignores the terms of the Settlement Agreement.  Contrary to plaintiffs' allegations, plaintiffs were not permitted, under the Settlement Agreement, to sell +3/4" laundry-grade pumice for "any purpose."  Am. Compl. ¶ 49.  Rather, plaintiffs' mining claims were expressly subject to all pertinent statutes and regulations.[14] Settlement Agreement ¶ 3.  These include the Forest Service regulations which, as affirmed in <u>Tidwell</u>, properly prohibit plaintiffs from selling El Cajete pumice for use outside of the stonewash laundry industry.  As discussed above, plaintiffs are estopped from challenging the lawfulness of the Forest Service's interpretation of its regulations on this basis now.  Consequently, plaintiffs' breach claims based on the Forest Service's

---

[14] The court rejects plaintiffs' argument that because the term "all pertinent statutes and regulations" is vague, disposal of this issue before summary judgment is improper.  This court, like the court in <u>Cook II</u>, looks to the federal mining statutes and Forest Service regulations identified by the parties that govern plaintiffs' mining claims.  85 Fed. Cl. at 824.

lawful interpretation of its regulations, to which plaintiffs are expressly subject under the terms of the Settlement Agreement, must be dismissed.

To the extent that plaintiffs argue that the government breached the Settlement Agreement by issuing the 2009 Notice of Indebtedness, plaintiffs fail to state a claim under the reasoning in Cook II.  In that case, this court found that the Forest Service did not breach the Settlement Agreement by filing an administrative complaint contesting the validity of the El Cajete mining claims.  85 Fed. Cl. at 822, 824.  The Cook II court also rejected plaintiffs' claims based on the implied covenant of good faith and fair dealing. Id. at 824.  The court reasoned that nothing in the Settlement Agreement exempted plaintiffs from coverage under the federal mining laws or the continuing obligations of the Department of the Interior to regulate unpatented mining claims.  Id.

Similarly, here, nothing in the Settlement Agreement deprives the government of the right to enforce its regulations, or its rights as a property owner to seek damages against plaintiffs for trespass and conversion of the common variety minerals that it retained under the Settlement Agreement and could validly regulate.  Cook II, 85 Fed. Cl. at 824; Rex Trailer Co. v. United States, 350 U.S. 148, 151 (1956) (holding that the "Government has the right to make contracts and hold and dispose of property, and, for the protection of its property rights, it may resort to the same remedies as a private person").  In this case, as in Cook II, plaintiffs base their breach claim on Forest Service

activity that is expressly permitted under the Settlement Agreement. Plaintiffs' claim for an express breach of contract is unsupported and must therefore be dismissed.[15]

Finally, plaintiffs' Count IV argues that the government breached the covenant of good faith and fair dealing inherent in the Settlement Agreement. Plaintiffs allege no additional facts unique to this claim. While the implied covenant of good faith and fair dealing is inherent in every contract, this requirement must be linked to a substantive obligation under the contract, and cannot be used to "expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." Precision Pine & Timber, Inc. v. United States, 596 F.3d 817, 831 (Fed. Cir. 2010) (citing Centex Corp. v. United States, 395 F.3d 1283, 1304-06 (Fed. Cir. 2005)). As explained above, the asserted breaches of the covenant of good faith and fair dealing here involve activities the government is authorized to undertake under the Settlement Agreement. As such, the Forest Service's actions did not "reappropriate any 'benefit' guaranteed by [that] contract[]," and do not constitute a breach of the implied covenant of good faith and fair dealing in this case. Precision Pine, 596 F.3d at 829.

The court thus holds that Counts III and IV of the Amended Complaint must be dismissed for failure to state a claim under RCFC 12(b)(6).

**C.    The court lacks subject matter jurisdiction over Counts V and VI of the Amended Complaint.**

---

[15] In addition, as explained above, plaintiffs are not currently operating the El Cajete Mine. Thus, to the extent that plaintiffs allege that the Notice of Indebtedness interferes with their rights under the Settlement Agreement to operate their mining claims because the Notice improperly regulates plaintiffs' mining activities, that claim is not ripe at this time.

### 1. Plaintiffs' misrepresentation claim sounds in tort and therefore falls outside this court's jurisdiction under the Tucker Act.

Count V of plaintiffs' Amended Complaint asserts a claim of misrepresentation against the government.  Specifically, Count V alleges that an unspecified number of Forest Service agents "made numerous oral and written representations to Copar during the course of mining operations."  Am. Compl. ¶ 59.  The central theme of these misrepresentations, according to the Amended Complaint, was that plaintiffs understood that they could remove both locatable pumice and a certain amount of undersized pumice from the El Cajete Mine, and that both types of pumice could be sold for any purpose. Id.  As gleaned from plaintiffs' brief in response to the government's motion to dismiss, the basis of the misrepresentations involves the communications surrounding and the resolution of the 2006 NON.[16]  As discussed above, the Forest Service and Copar apparently resolved the 2006 NON by allowing plaintiffs to remove a certain amount of undersized pumice from the El Cajete Mine.

In their Amended Complaint, plaintiffs allege that the government subsequently "determined that Copar had no right to operate the El Cajete mine or remove locatable pumice which contained any undersize pumice or contained any waste products or to process and wash locatable pumice for sale to the laundry industry where such processing

---

[16] Plaintiffs also appear to be arguing that Forest Service EIS statements made in 1996, 1997, and 1998 to the effect that the end-use of locatable El Cajete pumice was not a Forest Service concern form the basis of their misrepresentation claim.  Putting aside the age of these alleged misrepresentations, this claim was explicitly addressed by the district court in Bosworth, and affirmed by the Tenth Circuit in Tidwell.  Those courts held that the agency's interpretation that the end-use of the El Cajete pumice could be used to characterize the pumice as "common variety pumice" trumped the conflicting EIS statements.  Bosworth, 502 F. Supp. 2d at 1210-11.

creates any waste whatsoever." Id. ¶ 62.  As discussed above, the government issued the Notice of Indebtedness and then brought a suit for trespass, conversion, and unjust enrichment for the sale of any pumice from the El Cajete Mine for any purposes other than for the stonewash laundry industry.  See id.  Plaintiffs argue that they relied on the 2006 agreement and sold pumice for purposes other than for the stonewash laundry industry and have suffered damages as a consequence of the Forest Service's misrepresentations.  Id. ¶ 63.

Assuming, for the purposes of the government's motion to dismiss, that Forest Service officials did make the alleged representations to Copar, Count V still fails to assert a claim within the jurisdiction of this court.  Misrepresentation claims fall outside this court's jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), which bars this court from hearing claims "sounding in tort."  See, e.g., Federico v. United States, 70 Fed. Cl. 378, 387 (2006) ("Because intentional and negligent misrepresentation are claims sounding in tort, plaintiff's [claims] . . . are outside this court's jurisdiction.").

Plaintiffs argue that their misrepresentation claims are so linked to the government's contractual duties under the Settlement Agreement that their claims lie in contract rather than tort.  The Federal Circuit has held that if a "cause of action is ultimately one arising in contract," a related tort claim is "properly within the exclusive jurisdiction of the Court of Federal Claims."  Awad v. United States, 301 F.3d 1367, 1372 (Fed. Cir. 2002).  For example, this court has allowed recovery when plaintiffs allege that they entered into a contract in reliance on government misrepresentations.  Kenney Orthopedic, LLC v. United States, 103 Fed. Cl. 455, 462 (2012).

For this principle to apply, however, plaintiffs must "show a connection" between the allegedly tortious conduct and the specific "contractual obligations" of the government. L'Enfant Plaza Props., Inc. v. United States, 645 F.2d 886, 892 (Ct. Cl. 1981). It is not "jurisdictionally sufficient" for plaintiffs to allege tortious conduct that is "merely related in some general sense to the contractual relationship between the parties." Reforestacion de Sarapiqui v. United States, 26 Cl. Ct. 177, 192 (1992) (internal quotation omitted). In this case, plaintiffs have failed to allege the requisite connection between the alleged misrepresentations and the Settlement Agreement. In Count V, plaintiffs have not alleged that the Forest Service breached the Settlement Agreement through the alleged misrepresentations or any statements made in connection with the 2006 NON. Nor do plaintiffs point to any contractual obligations that the government may have breached due to the alleged misrepresentations.

In addition, a review of the 2006 NON reveals that, contrary to plaintiffs' assertion, the 2006 NON is based not on the Settlement Agreement, but on the Forest Service's regulations regarding the removal of common variety pumice from the El Cajete Mine. Pls.' Resp., Ex. 1 (2006 NON). While the 2006 NON states that plaintiffs' removal of common variety pumice from the El Cajete Mine violates the Settlement Agreement as well as Forest Service regulations, it is the regulations, which are also referenced in the Settlement Agreement, that serve as the basis for that notice:

> The removal of any pumice less than 3/4" in diameter is a violation of the approved Plan of Operations, which creates a noncompliance according to 36 Code of Federal Regulation (CFR) 228.7(b). All pumice less than 3/4" in diameter is common variety, and its unauthorized removal is a violation as defined in 36 CFR 228.47(b) and 36 CFR 261.9(b).

Id.  The 2006 NON cannot therefore provide the link between the Settlement Agreement and the alleged misrepresentations to allow this court to entertain plaintiffs' claim. Because plaintiffs have alleged tortious conduct that is only generally "related" to the Settlement Agreement, this court lacks jurisdiction over plaintiffs' misrepresentation claim.

Finally, to the extent that plaintiffs claim that they detrimentally relied on the Forest Service's alleged misrepresentations, this court lacks jurisdiction over that claim as well.  A claim based on detrimental reliance is a claim based on promissory estoppel.[17] See, e.g., Corrales v. United States, 56 Fed. Cl. 283, 285 (2003).  "This court has no jurisdiction over claims for promissory estoppel, as it requires the finding of a contract implied-in-law against the Government, for which there has been no waiver of sovereign immunity."  Sinclair v. United States, 56 Fed. Cl. 270, 281 (2003) (citing Hercules, Inc. v. United States, 516 U.S. 417, 423-24 (1996)).  Here, the Amended Complaint asserts that plaintiffs "rel[ied]" on the Forest Service's alleged misrepresentations, and "suffered damages" as a result.  Am. Compl. ¶¶ 60, 63.  To the extent that plaintiffs are alleging a promissory estoppel claim, this claim also falls outside this court's jurisdiction.

Thus, for these reasons, this court lacks jurisdiction over plaintiffs' misrepresentation claim, and Count V of the Amended Complaint must be dismissed under RCFC 12(b)(1).

---

[17] To establish a claim for promissory estoppel, a claimant must show: (1) A promise or representation was made; (2) the claimant's reliance on this promise was detrimental and reasonable; and (3) the promisor reasonably should have expected the detrimental reliance. Sinclair v. United States, 56 Fed. Cl. 270, 282 n.15 (2003).

### 2.    Plaintiffs' unjust enrichment claim also sounds in tort and falls outside this court's jurisdiction.

Finally, this court lacks jurisdiction over plaintiffs' unjust enrichment claim. Count VI of plaintiffs' Amended Complaint alleges that the government "has been and will be unjustly enriched by virtue of its conduct in unlawfully regulating the mining operations . . . by prohibiting the removal of 3/4"+ locatable pumice from the claims and by assessing substantial damages, penalties, fees, costs and amounts against Copar for the removal, processing and sale of the 3/4"+ pumice."  Am. Compl. ¶ 65.  Plaintiffs ask for damages based on this claim, including any damages awarded against Copar that result from the government's pending trespass, conversion, and unjust enrichment action.  Id. at 13.

An "unjust enrichment" claim generally exists when one party benefits at another's expense, and where allowing that party to retain that benefit would be inequitable.  Int'l Air Response v. United States, 75 Fed. Cl. 604, 612 (2007).  An unjust enrichment claim is an equitable implied-in-law contract claim.  Id.; Cross Country Indus., Inc. v. United States, 231 Ct. Cl. 899, 901 (1982).  It is well-settled that the Tucker Act contains no waiver of sovereign immunity for claims that are implied-in-law, including unjust enrichment claims.  See Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1324-25 (Fed. Cir. 1997).

Plaintiffs argue that their unjust enrichment claim is one for contract damages based on the government's alleged breach of the Settlement Agreement.  Yet, plaintiffs may not assert a claim for unjust enrichment where "an express contract already covers

the same subject matter." <u>Short Bros., PLC v. United States</u>, 65 Fed. Cl. 695, 800 (2005)

(citing <u>Trauma Serv.</u>, 104 F.3d at 1326).  The cases plaintiffs cite in support of their

claim are inapposite because they pertain to whether restitution damages are available for

a breach of an actual contract, not whether this court has jurisdiction to hear a separate

unjust enrichment claim.  <u>Mann v. United States</u>, 68 Fed. Cl. 666, 671 (2005) (discussing

restitution damages for breach of an actual contract); <u>Landmark Land Co. v. FDIC</u>, 256

F.3d 1365, 1372 (Fed. Cir. 2001) (measuring damages based on breach of contract).

For these reasons, the court lacks subject matter jurisdiction over plaintiffs' unjust

enrichment claim.  Count VI of plaintiffs' complaint must also be dismissed for lack of

subject matter jurisdiction under RCFC 12(b)(1).

## V.    CONCLUSION

For the foregoing reasons, the court **GRANTS** the government's motion to

dismiss plaintiffs' entire complaint.  The court lacks subject matter jurisdiction under

RCFC 12(b)(1) over Counts I, V, and VI of plaintiffs' Amended Complaint.

Alternatively, Count I must be dismissed for failure to state a claim upon which relief

may be granted under RCFC 12(b)(6).  Counts II, III, and IV are also dismissed for

failure to state a claim under RCFC 12(b)(6).  Each party shall bear its own costs. The

Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge